The lessor of the plaintiff claimed under a patent, issued in 1738, for 288 acres of land, lying on Neuse river, and bounded as follows: "Beginning at a hickory, below the mouth of Beaverdam branch, and runs up the pocosin and branch, N. 71 degrees, W. 45 poles; thence still along said branch and adjoining Keith's lands, N. 15 degrees, W. 98 poles; thence N. 66 degrees, W. 87 poles, to a gum, near the said branch; thence N. 21 degrees, E. 90 poles to a white oak; thence N. 80 degrees, (480) E. 144 poles, to a red oak; thence S. 60 degrees, E. 100 poles, to a pine; thence S. 20 degrees, E. 142 poles, to a red oak by the river side; thence up the river to the beginning." The lessor of the plaintiff claimed to begin at A, in the annexed diagram, and thence to B, C, D, E, F, G, and H, so as to include a small field of three or four acres in the defendant's possession, near the line D, E. On *Page 378 
the other hand the defendant insisted that the beginning of the lessor of the plaintiff's land was at K, and thence to L, M, N, O, P, Q, R, so as to exclude the land in his possession; and it was admitted by the plaintiff's lessor that if the patent did begin at K he could not recover. No hickory was found at either A or K, and it did not appear that there were any other trees corresponding with those called for in the grant.
[EDITORS' NOTE: THE DIAGRAM IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 20 N.C. 378.]
(481) His Honor instructed the jury to find for the defendant, if they should think the beginning was at K. And he further instructed them that, supposing the beginning to be at A, then the branch must be followed for 143 poles (the length of the two first lines) because it was called for in the grant; and that, if running that way, the patent would not cover the defendant's possession their verdict should, in that case, also be for the defendant. There was a verdict and judgment for the defendant, and the lessor of the plaintiff appealed.
The opinion of the Court is for the defendant, upon each hypothesis, as *Page 379 
to the beginning. If that could be supposed to have been at A, then, certainly, the plaintiff could not follow the course and distance so as to go to B, because that would be going nearly in a rectangular direction from
the branch, instead of running "along" it; and the second line from B to C would not be near the branch, except at its (482) termination. It is said, however, that boundary is a question of fact for the jury; and that, as both the pocosin and branch are called for in this grant this was, at least, a fit case for proof to the jury, as to which one of them should control the calls for course and distance. In support of these positions the cases of Orbison v. Morrison, 3 Murph., 551, and Brooks v. Britt, 4 Dev., 481, have been relied on. But the Court cannot allow it be questioned, at this day, that the construction of a deed, upon the question of the boundary, is as much a legal question as upon any other point, although it is the province of the jury to say which, or where situate, may be the particular tree, stone or stream called for; nor that, as a principle of construction, a natural and permanent object shall not be deemed the boundary, in preference to the line designated by course and distance. It is true that the call for a natural boundary may be itself vague or imperfect, or even contradictory; as for a stream, where there are two of the same name, or it be uncertain which of the two bears the name or for two natural objects, e. g. a branch and a pocosin, which, upon evidence, appear not to be identical, but to be at different places; then, necessarily, the case is open for evidence to the jury, as to which was the object meant, and by which the survey was actually made. Of this last kind was the case of Brooks v. Britt, in which it was held as a matter of law that Swift Creek swamp was the boundary, but it was left to the jury to say what was the swamp — it being uncertain whether the run or the margin of the sunken land was so called. The same rule was adopted in Hurley v.Morgan, 1 Dev. and Bat., 425, as which of several streams was the particular branch called for. But, in the present case, there is nothing to create the suspicion that the pocosin and branch do not so entirely coincide as to render it certain that the branch, as a distinct natural object, in itself defined and appropriate for the line of a patent, was not the special terminus of the tract. The case states no discrepancy in theobjects called for. The dispute is only where the object called for, as the beginning, stood, and whether, from that, the running is to be according to the natural or the mathematical description. It is settled law that it must be according to the former.
In truth, however, the question thus submitted to the jury did (483) not arise, for we think it clear that the patent begins at K, or, in other words, on the river, and immediately below the mouth of the branch mentioned. The beginning could not be at A, which, according to the plat, is about 100 poles above the mouth of the branch, for the *Page 380 
patent describes the land as lying on Neuse River, and beginning below the mouth, that is, on the lower side of the mouth, of the branch; and the last line, but one, goes to a red oak by the river side, and thence up the riverto the beginning. These termini, independent of the calls for the branch in the first and second lines, clearly fix the beginning of the survey on the river; and, consequently, by the admission of the plaintiff himself, the survey made from that point would not include the land claimed by the defendant.
PER CURIAM. Judgment affirmed.
Cited: Williams v. Kivett, 82 N.C. 115; Redmond v. Stepp, 100 N.C. 219;Brown v. House, 118 N.C. 881; Bowen v. Gaylord, 122 N.C. 820. *Page 381